[Cite as *Hetzner v. Hetzner*, 2023-Ohio-3951.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michelle Hetzner, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-176 |
| v. | : | (C.P.C. No. 22DR-0823) |
| Travis Hetzner, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 31, 2023

**On brief:** *Scott T. Martin* for appellee. **Argued:** *Scott T. Martin.*

**On brief:** *Robert R. Goldstein* for appellant. **Argued:** *Robert R. Goldstein.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

EDELSTEIN, J.

{¶ 1} Defendant-appellant, Travis Hetzner, appeals from the February 22, 2023 judgment entry and final divorce decree of the Franklin County Court of Common Pleas, Division of Domestic Relations. On appeal, Mr. Hetzner takes issue with the trial court's determination that the real estate at issue in this case was marital property and the trial court's equal distribution of the equity in that real estate between the parties. For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL OVERVIEW

{¶ 2} Mr. Hetzner and plaintiff-appellee, Michelle Hetzner, were married on December 29, 2017. In March 2022, Ms. Hetzner filed a complaint for divorce. In response, Mr. Hetzner filed an answer and counterclaim asserting, among other things, that he owned

the real estate located at 641 Azalea Fields Drive, Blacklick, Ohio 43004, prior to the marriage. (Apr. 7, 2022 Answer and Counterclaim at ¶ 8.) At all relevant times during the parties' marriage, this was their shared marital residence. (Feb. 22, 2023 Divorce Decree at 8.) Although many contested matters arose during the pendency of litigation in the court below, most are not relevant to our determination of the narrow issue before us: whether the trial court erred in finding the Azalea Fields residence was marital property.

{¶ 3} The trial court held a divorce trial on January 5, 2023. As part of that trial, the parties filed joint stipulations, which were accepted by the trial court and admitted into the record. (*See* Joint Ex. 1.) The parties agreed on most things but did not agree on the distribution of real estate equity in the Azalea Fields residence. (*See* Joint Ex. 1 at 1.)

{¶ 4} Prior to trial, Mr. Hetzner maintained in his pretrial statement that the Azalea Fields residence was his separate property but conceded that Ms. Hetzner "may have a small interest in the real estate based on [some small repairs that were made] and mortgage payments made during the marriage." (June 14, 2022 Def.'s Pre-Trial Statement at 3.) Of note, Ms. Hetzner admitted in her pre-trial statement that the Azalea Fields residence was purchased prior to the marriage but suggested its value had increased "during the marriage due to the labor, finances, or in-kind contribution of both spouses." (June 16, 2022 Pl.'s Pre-Trial Statement at 1-2.)

{¶ 5} Both parties testified at trial. Ms. Hetzner also presented testimony from appraiser John William Uttley, III about the value of the Azalea Fields residence and from real estate agent Pamela Beres about her interactions with the parties in connection with the purchase of that property.

{¶ 6} Three of the trial court's unchallenged findings are key to our analysis of the issues presented on appeal. *First*, the trial court found the parties' marriage commenced on their ceremonial date of marriage, December 29, 2017, and ended on January 5, 2023, the date of the divorce trial. (Divorce Decree at 8.) *Second*, the trial court found—and no one disputed at trial—that the Azalea Fields residence was purchased **before** the parties were married on December 29, 2017. (Divorce Decree at 8-9.) Indeed, the purchase agreement was executed only by Mr. Hetzner on March 12, 2017. (Divorce Decree at 9. *See also* Jan. 5, 2023 Tr. at 43.) Closing on that property occurred on September 15, 2017, with only Mr. Hetzner's name appearing on the closing documents. (Divorce Decree at 8-9. *See*

*also* Tr. at 36-37, 45-49, 54-55.)  *Third*, the trial court concluded that the evidence and testimony presented at trial unequivocally established that both the mortgage and deed to the Azalea Fields residence were solely in Mr. Hetzner's name and never in Ms. Hetzner's name.  (Divorce Decree at 8.  *See also* Tr. at 55-56, 70.)

{¶ 7}   On February 22, 2023, the trial court issued a decision with findings of fact and conclusions of law.  Although the trial court made the key findings summarized above, it nonetheless found that "[t]he totality of the circumstances clearly demonstrates that the intent of the parties was for the residence to be marital property subject to equitable division."  (Divorce Decree at 9.)  In making this finding, the trial court pronounced its belief that "[t]here is no binding caselaw authority on the issue at hand" and concluded this case was "factually akin" to *Lynch v. Lynch*, 12th Dist. No. CA2008-02-028, 2008-Ohio-5837, and *Bugos v. Bugos,* 11th Dist. No. 98-T-0141, 1999 Ohio App. LEXIS 4875 (Oct. 15, 1999). (*Id.*)

{¶ 8}   Based on that finding, the trial court awarded the Azalea Fields residence to Mr. Hetzner while also awarding Ms. Hetzner a lump sum payment of $82,000 from Mr. Hetzner for "her portion of the marital equity in the marital residence."  (Divorce Decree at 12.)

{¶ 9}   Mr. Hetzner timely appealed from the trial court's February 22, 2023 judgment and asserts two assignments of error for our review:

> [I.] THE COURT ERRED IN FINDING THAT THE REAL ESTATE IN THIS CASE IS MARITAL PROPERTY.
>
> [II.] THE COURT ERRED IN DIVIDING THE EQUITY OF THE REAL ESTATE EQUALLY BETWEEN THE PARTIES.

## II. ANALYSIS

{¶ 10} Mr. Hetzner's two assignments of error both relate to the trial court's determination that the Azalea Fields residence constituted marital property.  Accordingly, we address both assignments of error together.

### A.  Law and Standard of Review

{¶ 11} In divorce proceedings, the trial court is required to determine what constitutes marital property and what constitutes separate property.  R.C. 3105.171(B).  After determining what constitutes marital property and what constitutes separate

property, the court is required to divide the marital and separate property equitably. R.C. 3105.171(B).  R.C. 3105.171(C)(1) provides that marital property shall be divided equally, unless an equal division would be inequitable, in which case the property shall be divided in the manner the court determines equitable.  The trial court must value the marital property to determine an appropriate division.  *See Raymond v. Raymond*, 10th Dist. No. 11AP-363, 2011-Ohio-6173, ¶ 22.

{¶ 12}  It is axiomatic that marital property does not include separate property. R.C. 3105.171(A)(3)(b).  Separate property is statutorily defined in R.C. 3105.171(A)(6).

{¶ 13}  When the parties contest whether an asset is marital or separate property, it is presumed to be marital property unless proven otherwise.  *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 11.  The "party requesting that an asset be classified as separate property bears the burden of tracing [it] to his or her separate property."  *Id*.  This requires showing by a preponderance of the evidence that one of the R.C. 3105.171(A)(6)(a) "separate property" definitions applies to the asset.  *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 23.  The statute further provides that the commingling of separate property with any other type of property does not destroy its identity, unless the separate property is not traceable.  R.C. 3105.171(A)(6)(b).

{¶ 14}  The characterization of property as marital or separate must be supported by competent, credible evidence.  *Roush v. Roush*, 10th Dist. No. 15AP-1071, 2017-Ohio-840, ¶ 18, citing *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 36. Thus, we review a trial court's determination of property as marital or separate under a manifest weight standard.  *See id*.

{¶ 15}  However, where interpretation of statutes is involved, our review is de novo, and we give no deference to a trial court's conclusions of law.  *See, e.g.*, *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶ 23.  *See also Zimmer v. Zimmer*, 10th Dist. No. 00AP-383, 2001 Ohio App. LEXIS 713, *5 (Feb. 27, 2001).

**B. Analysis**

{¶ 16}  The primary issue here is whether the trial court erred in finding that the real estate in question constituted marital property.  For the following reasons, we conclude that the court erred.

{¶ 17} In Ohio, "marital property" includes, among other things, "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses ***during the marriage***." (Emphasis added.) R.C. 3105.171(3)(a)(i). In contrast, Ohio law defines "[s]eparate property" as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii). " 'Marital property' does not include any separate property." R.C. 3105.171(3)(b).

{¶ 18} In this case, it is undisputed that the Azalea Fields residence was acquired by Mr. Hetzner on September 15, 2017—over three months before the date of the parties' December 29, 2017 ceremonial marriage. Under the plain language of the statute, the Azalea Fields residence constituted Mr. Hetzner's separate property because it was not acquired ***during the marriage***.

{¶ 19} Notwithstanding the clear statutory definitions for "marital property" and "separate property," however, Ohio law provides an equitable process for situations wherein the domestic court finds it would be appropriate to treat property acquired before the parties' ceremonial wedding date as marital property for purposes of distributing assets in divorce proceedings. Specifically, R.C. 3105.171(A)(2) provides that the phrase "[d]uring the marriage" means whichever of the following is applicable:

> a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>
> b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 20} In other words, a trial court can find that property acquired prior to the parties' ceremonial marriage was nevertheless acquired "during the marriage"—and thus, subject to equitable division—if the trial court finds it would be appropriate to use a date prior to the ceremonial wedding date as the parties' de facto marriage date. *See, e.g., Dach*

*v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 8-17; *Hornbeck v. Hornbeck*, 2d Dist. No. 2018-CA-75, 2019-Ohio-2035, ¶ 13-40. However, Ms. Hetzner never asked the trial court to consider using an earlier date as the de facto marriage date for purposes of dividing the marital property under R.C. 3105.171. And, the trial court did not decide to, sua sponte, employ the process set forth in R.C. 3105.171(A)(2)(b). In fact, the trial court expressly found the parties' marriage commenced on December 29, 2017—three months after Mr. Hetzner acquired the Azalea Fields residence.

**{¶ 21}** The trial court's discussion about the parties' intention, interactions with the real estate agent, and joint involvement in the building process might be relevant to its determination as to whether it would be inequitable to use the December 29, 2017 ceremonial wedding date as the date of marriage in this case. But, fatal to Ms. Hetzner's position—and the trial court's decision—is that the trial court expressly selected the ceremonial wedding date, December 29, 2017, as the date on which the parties' marriage commenced.

**{¶ 22}** As a result, the trial court's finding that the Azalea Fields residence is marital property is not supported by competent, credible evidence and, furthermore, is contrary to law. Because the trial court found the Azalea Fields residence was purchased only by Mr. Hetzner prior to the parties' marriage, it was "[s]eparate property" under the plain and unambiguous language of R.C. 3105.171(A)(6)(a)(ii). The trial court erred in concluding otherwise, and we need not consult caselaw to reach this determination because the controlling statutory provisions on this matter are clear. As the Supreme Court of Ohio has repeatedly and recently explained, " '[b]ecause the General Assembly is the final arbiter of public policy, judicial policy preferences may not be used to override valid legislative enactments.' " *State v. Bortree*, 170 Ohio St.3d 310, 2022-Ohio-3890, ¶ 20, quoting *State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, ¶ 17. We are thus duty bound to apply the laws as they are written.

**{¶ 23}** For these reasons, we sustain Mr. Hetzner's first assignment of error. Our resolution of the first assignment of error renders Mr. Hetzner's second assignment of error moot. While it may be true that Mr. Hetzner has an obligation to reimburse Ms. Hetzner for her contributions—mortgage payments, improvements, partial down payment, inspection payment, or otherwise—towards the Azalea Fields residence, we decline to make

any findings on this issue and instead remand to the trial court for further proceedings consistent with our decision.

## III. CONCLUSION

{¶ 24} Having sustained Mr. Hetzner's first assignment of error and finding his second assignment of error to be moot, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand this matter for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

MENTEL and JAMISON, JJ., concur.