[Cite as *Yarosz v. Montgomery*, 2024-Ohio-652.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

RONALD A. YAROSZ,

Plaintiff-Appellee,

v.

LISA R. MONTGOMERY,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 JE 0006**

---

Domestic Relations Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 2021-DR-182

**BEFORE:**
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment,
Cheryl L. Waite, Mark A. Hanni, Judges.

**JUDGMENT:**
Affirmed.

*Atty. Jane M. Hanlin*, Bruzzese, Hanlin & Bruzzese, LLC, for Plaintiff-Appellee and

*Atty. Aaron M. Meikle*, for Defendant-Appellant.

Dated: February 20, 2024

**KLATT, J.**

**{¶1}** Appellant, Lisa R. Montgomery, appeals from the January 19, 2023 judgment of the Jefferson County Court of Common Pleas, granting her and Appellee, Ronald A. Yarosz, a divorce and awarding the marital residence to Appellee. On appeal, Appellant asserts the trial court erred in awarding Appellee the full amount of his contributions to the house and failing to recognize any premarital interest she had in the property. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** In 2005, Appellant purchased the marital residence, 559 Township Road 376, Toronto, Jefferson County, Ohio, for $100,000. In 2006, the parties began living together before marrying on November 6, 2015. No children were born as issue of the marriage.

**{¶3}** On July 2, 2021, Appellee filed a complaint for divorce. Appellee alleged Appellant had been guilty of gross neglect of duty, extreme cruelty, financial misconduct, and the parties were otherwise incompatible. Appellee claimed Appellant had abandoned the marriage and moved to the State of Indiana. On August 27, 2021, Appellant filed an answer and counterclaim. Appellant alleged Appellee had been guilty of gross neglect of duty, financial misconduct, alcohol abuse, extreme cruelty, and the parties were otherwise incompatible.

**{¶4}** A final evidentiary hearing was held on March 10, 2022.

**{¶5}** As stated, the parties were married on November 6, 2015. They lived at the marital residence prior to the date of the marriage, from approximately 2006 until late 2011. (3/10/2022 Evidentiary Hearing Tr., p. 10). Appellee moved out in 2011 and moved back into the home in 2015. (*Id.* at p. 10-11).

**{¶6}** Appellee began paying the mortgage and other expenses when he first moved in with Appellant. (*Id.* at p. 11). Appellee made those payments for about five years, until the parties ended their relationship for a period of time. (*Id.*) Appellee resumed paying the entire mortgage as early as January 2015. (*Id.* at p. 14-15). Appellee

made the monthly mortgage payment from January 2015 through the date of the final evidentiary hearing, March 10, 2022. (*Id.* at p. 15).

**{¶7}** When Appellee sold his prior residence, he used the proceeds from that sale to improve the marital residence. (*Id.*) Appellee provided written documentation regarding the sale proceeds of his prior home ($101,741) as well as the exact dollar amount from those proceeds ($75,257.79) that he invested into the marital residence. (*Id.* at p. 16-26). Appellant agreed to add Appellee's name to the deed so that he would receive the property if something unfortunate were to happen to her. (*Id.* at p. 15-16).

**{¶8}** Appellant resided in the marital residence until February 23, 2021 when she moved to the State of Indiana. (*Id.* at p. 27-28). Appellee said Appellant did not contribute to any expenses associated with the home, including mortgage payments, utility payments, or other expenses. (*Id.*) Appellee stated he was the only one paying the home improvement loan attached to the residence and that he received no contributions from Appellant whatsoever. (*Id.* at p. 28-30).

**{¶9}** On cross-examination, Appellee confirmed he did not believe the marital residence had any equity in 2012. (*Id.* at p. 81-82). Appellee explained he was seeking credit for the money that he invested in the home and that the parties would equally divide any remaining equity that existed at the time of the final hearing. (*Id.* at p. 85).

**{¶10}** Appellant testified she purchased the home in 2005 and made a $23,000 down payment. (*Id.* at p. 139-141). When Appellant refinanced in 2012, the residence was worth $120,000. (*Id.*) Appellant incorrectly asserted she had $120,000 in equity in the home. (*Id.*) In fact, at that time, there was an $80,000 mortgage on the home. (*Id.* at p. 141). Appellant said she had pictures showing improvements to the residence but provided no documentation. (*Id.* at p. 142). Appellant also claimed, without documentation, that she withdrew $5,000 from her premarital IRA for the home. (*Id.* at p. 143).

**{¶11}** Following the hearing, the magistrate issued a decision recommending the parties be granted a divorce due to incompatibility and stating in part:

5. Both Parties wish to retain ownership of the residence located at 559 Township Road 376, Toronto, Ohio. The testimony indicated that [Appellant] purchased the residence in 2005 for $100,000.00 and

refinanced the mortgage in 2012 when the house was appraised for $120,000.00

6. Once the Parties were married [Appellee] sold his home and invested $75,257.79 into the marital residence. The Parties stipulated and agreed that the real estate now has an appraised value of $190,000.00. The testimony indicated that [Appellee] has been solely responsible for payment of the mortgage and the home improvement loan since the date of the marriage.

7. At the time [Appellant] left the State of Ohio the mortgage balance was $36,511.98 and the remaining balance on the home improvement loan was $15,964.90. As of the date of separation the equity in the residence was $137,523.12. After subtracting the $75,257.79 in separate funds that [Appellee] invested in the residence * * *, the remaining equity is $62,265.33. [Appellant's] share is $31,132.66.

(4/4/2022 Magistrate's Decision, p. 1-2).

{¶12} On April 14, 2022, Appellant filed objections to the magistrate's decision. Specifically, Appellant claimed "[t]he Court erred by awarding [her] pre-marital real estate to [Appellee]." (4/14/2022 Objections to Magistrate's Decision, Objection 2, p. 3). In that objection, Appellant claimed she purchased the property and put $24,000 down as a down payment in 2005 (which contradicted her testimony at the final evidentiary hearing); claimed she spent $30,000 renovating the house prior to the marriage (but submitted no receipts); and claimed she spent $10,000 of her pre-marital IRA on the residence (as opposed to the $5,000 that she claimed at the hearing in which she provided no receipts). (*Id.*)

{¶13} On August 15, 2022, Appellee filed a response to Appellant's objections to the magistrate's decision. Specifically, regarding Objection 2, Appellee stated in part:

[Appellant] makes much of the fact that she lived in the marital residence prior to the date of the marriage; however, she ignores the undisputed testimony during the final evidentiary hearing that [Appellee] had been

residing in the house as early as 2006, despite the fact that the parties were not married until 2015. (The parties lived in that residence from 2006 to 2011, split up and were then reunited in 2015.) (TR 10) Additionally, [Appellant] ignores the fact that the undisputed testimony at the hearing that [Appellee] began paying the mortgage and other expenses at the residence well-prior to the date of the marriage. (TR 11)

[Appellee] introduced evidence that he began paying the mortgage associated with the marital residence exclusively in January 2015 and continued to make it through the date of the final hearing. (TR 14-15) [Appellee] also testified that when he sold his prior residence, [Appellant] added his name to the marital residence. * * *

[Appellee] further testified that he then used the proceeds from the sale of his former residence to improve the marital residence. (TR 15) [Appellee] testified that he cleared $101,741.00 from the sale of his prior residence and invested that money into upgrades to the marital residence. (TR 16-26) In fact, [Appellee] traced, with written documentation, that he had contributed $75,257.79 to the marital residence – all of which came from the sale of his prior home. (TR 26-27) [Appellant] did not dispute that. (TR 203-204)

At the hearing, [Appellee] testified that [Appellant] last resided in the marital residence on February 23, 2021 and that she never resided there again after that date. (TR 27) He further testified that, once [Appellant] left the marital residence, she never made any contribution whatsoever to any of the expenses associated with the marital residence after that date. (TR 27-28) Further, [Appellee] testified that he was the only one to pay the home improvement loan with Valley One and that [Appellant] never made any contributions to that debt once she left the marital residence in February 2021. (TR 28-29)

[Appellee] testified that he had absolutely no intentions on selling the residence and had no intention of living any place else. (TR 30) * * *

Finally, [Appellee] testified and provided written documentation that he had been approved and qualified to refinance the debt associated with the marital residence so as to release [Appellant] from the same. (TR 31-32)

Conversely, [Appellant] admitted that she had been living in West Lafayette, Indiana since February 23, 2021 and that she had not lived in the State of Ohio since then. (TR 186) She admitted that she had secured employment in the State of Indiana and continued to hold that position as of the date of the final hearing. (TR 186)

* * *

In this second Objection, [Appellant] claims that she put down $24,000.00 as a down payment on the marital residence in 2005, that she spent $30,000.00 renovating the house and spent $10,000.00 of her premarital IRA on the residence. Unfortunately for [Appellant], she provided proof of none of this.

While [Appellee] could trace every single dollar of his premarital funds that went to the house, [Appellant] failed to do the same. She claimed she spent $30,000.00, plus $10,000.00 from a premarital IRA renovating the house in 2005, but she provided no proof whatsoever and conceded that "most of the work and the completion of the house – I have pictures – was done in 2017. And that's when we took out that home loan." (TR 142)

* * * [Appellant] simply failed to meet her burden to prove any premarital interest in the property.

(Emphasis sic) (8/15/2022 Appellee's Response to Appellant's Objections to Magistrate's Decision, p. 3-6).

Case No. 23 JE 0006

{¶14} A hearing on the objections was held on two separate dates, August 22, 2022 and October 21, 2022. Appellee again explained that he had traced all of the premarital monies invested into the marital residence and that he had done so with written documentation, which demonstrated the exact amount of his contributions.

{¶15} Addressing the objections as raised and argued, the trial court found and concluded in pertinent part:

OBJECTION 2 – [Appellant's] argument regarding the character of the real property and the value of her separate property is supported in that she purchased the property prior to the marriage; however, there was a mortgage and [Appellee] provided evidence tracing his contribution to the same as stated in the Magistrate's decision. Further, although [Appellant] claims it is her sole, pre-marital property, she provided no supporting documentation or convincing evidence in support of her claim. [Appellee], however, was able to prove that he sold his pre-marital home and through accounting and receipts demonstrate that some proceeds of that sale were used toward [Appellant's] real estate (addition and remodeling) as well as other purchases such as the Parties' wedding, vacations, and the engagement ring. In fact, the record demonstrates that [Appellee] resided there as early as 2006. The Court recognizes that the Parties were not married at that time. The Court further finds that the Parties stipulated to the value of the real estate and to [its] appreciation. The Court further finds that although [Appellant] claims she spent $30,000.00 and then an additional $10,000.00 of her separate monies on the marital residence, other than her testimony provided no evidence of the same. [Appellant] is not in a financial position to buy out [Appellee's] interest. Although she claims she was approved for a loan, again, other than her testimony provided no additional evidence of the same. Therefore, the Court overrules [Appellant's] objection and finds that the Magistrate's decision was appropriate and consistent with Ohio law. Objection 2 is OVERRULED.

(1/3/2023 Judgment Entry, p. 3).

**{¶16}** On January 19, 2023, a judgment decree of divorce was filed granting the parties a divorce based upon incompatibility. The trial court ordered, inter alia, that the marital residence be awarded to Appellee free and clear of any claim of Appellant. (1/19/2023 Divorce Decree, p. 2)[1].

**{¶17}** Appellant filed a timely appeal and raises one assignment of error.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY AWARDING MR. YAROSZ THE FULL AMOUNT OF HIS CONTRIBUTIONS TO THE HOUSE AND FAILING TO RECOGNIZE ANY PREMARITAL INTEREST MS. MONTGOMERY HAD IN THE PROPERTY.**

**{¶18}** In her sole assignment of error, Appellant argues the trial court erred in awarding Appellee the full amount of his contributions to the residence. Appellant further claims the court failed to distinguish between marital and separate property, pursuant to R.C. 3105.171, and failed to recognize her premarital interest in the property. Appellant asserts the court erred in awarding her only $31,132.66. *See* (1/19/2023 Divorce Decree).

> A trial court has broad discretion when allocating marital assets. *Neville v. Neville,* 99 Ohio St.3d 275, 791 N.E.2d 434, 2003-Ohio-3624, at ¶ 5; *Stevens v. Stevens* (1986), 23 Ohio St.3d 115, 120, 492 N.E.2d 131. Generally, we would review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 355, 421 N.E.2d 1293. However, the characterization of property as separate or marital is a mixed question of law and fact and the characterization must be supported

---

[1] The decree lists that Appellee contributed $75,257.79 to the residence; the outstanding balance on the mortgage was $36,511.98; and the balance on the home improvement loan is $15,964.90. When determining Appellant's share of the equity in the property, the trial court started with the stipulated appraisal value of $190,000, subtracted the balance of the mortgage and the home improvement loan to determine a total equity of $137,523.12. The court then subtracted Appellee's contributions of $75,257.79 and determined the remaining equity to be $62,265.33. The court then divided the remaining equity between the parties and awarded Appellant $31,132.66. (*Id.*)

by sufficient, credible evidence. *Sanor v. Sanor,* 7th Dist. No. 2001 CO 37, 2002-Ohio-5248, at ¶ 53; see also *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 401, 1998-Ohio-0403. Once the characterization has been made, the actual distribution of the asset may be properly reviewed under an abuse-of-discretion standard. *Id.*

*Teaberry v. Teaberry*, 7th Dist. Mahoning No. 07 MA 168, 2008-Ohio-3334, ¶ 13.

An appellate court reviews a trial court's determination of property division under a manifest weight of the evidence standard. *Martin v. Martin* (1985), 18 Ohio St.3d 292, 480 N.E.2d 1112. A judgment of a trial court will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. However, the trial court's decisions are unreasonable if no sound reasoning process exists to support that decision. *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597. A reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony. *In re Jane Doe I* (1990), 57 Ohio St.3d 135, 566 N.E.2d 1181; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273.

*Hippely v. Hippely*, 7th Dist. Columbiana No. 01 CO 14, 2002-Ohio-3015, ¶ 6.

**{¶19}** "A domestic relations court is required, when granting a divorce, to equitably divide and distribute the marital property." *Teaberry, supra,* at ¶ 14, citing R.C. 3105.171(B). "In order to do this, the trial court must determine what constitutes marital property and what constitutes separate property." *Id.*

{¶20} R.C. 3105.171, "Division of marital property; separate property," states in part:

(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses * * *.

(b) "Marital property" does not include any separate property.

(4) "Passive income" means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse.

(5) "Personal property" includes both tangible and intangible personal property.

(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;

(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;

(v) Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial or postnuptial agreement;

(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section.

Case No. 23 JE 0006

\* \* \*

(D) Except as otherwise provided in division (E) of this section or by another provision of this section, the court shall disburse a spouse's separate property to that spouse. If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse.

\* \* \*

(H) Except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property.

R.C. 3105.171(A)(3)-(6), (B), (D), and (H).

{¶21} Appellant cites to *Sicilia v. Sicilia*, 7th Dist. Columbiana No. 99-CO-66, 2001 WL 1126664 (Sept. 17, 2001), for the proposition that a case must be remanded when a trial court fails to determine whether proceeds from the sale of the home were marital or separate. Appellant's reliance on *Sicilia* is misplaced. In the case at bar, the trial court properly determined which party proved a separate property interest. The record reveals Appellee did and Appellant did not.

{¶22} Appellant complains Appellee deposited his separate property into what later would become a joint account. However, this did not convert the property to marital property as it was properly found to be traceable. *See* R.C. 3105.171(6)(b) ("The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.") The trial court complied with R.C. 3105.171(B) because it properly determined "what constitutes marital property and what constitutes separate property."

{¶23} "'The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset

to separate property.'" *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 50, quoting *Pruitt v. Pruitt,* 8th Dist. Cuyahoga No. 84335, 2005-Ohio-4424, ¶ 70.

**{¶24}** Here, Appellee met his tracing burden and Appellant failed to produce any evidence challenging that traceability. *See, e.g., Victor v. Kaplan*, 8th Dist. Cuyahoga No. 108252, 2020-Ohio-3116 (Once a party to a divorce proceeding has met his or her burden in tracing property as separate, the burden shifts to the other spouse to show that the particular funds were not separate.); *see also Estate of Reed v. Reed*, 9th Dist. Medina Nos. 16CA0063-M, 16CA0068-M, 16CA0069-M, 2017-Ohio-8350, ¶ 8, quoting *Eikenberry v. Eikenberry*, 9th Dist. Wayne No. 09CA0035, 2010-Ohio-2944, ¶ 28 ("'merely claim(ing) that the property (* * *) constitutes (* * *) separate property does not make it so.'") The record establishes and the trial court properly found that Appellant failed to demonstrate any separate property interest.

**{¶25}** Based on the facts presented, the trial court's decision does not go against the manifest weight of the evidence. As stated, Appellee provided written documentation regarding the sale proceeds of his prior home ($101,741) as well as the exact dollar amount from those proceeds ($75,257.79) that he invested into the marital residence (his separate funds). As of the date of separation, the equity in the residence was $137,523.12. The trial court properly subtracted the $75,257.79 in separate funds that Appellee invested in the residence, revealing the remaining equity as $62,265.33, thereby making Appellant's share $31,132.66.

**{¶26}** The trial court did not err in awarding Appellee the full amount of his premarital and separate interest in the marital residence and, in turn, did not err in denying Appellant's request for the same since she failed to prove her premarital or separate interest. While Appellee traced his entire separate property interest, Appellant failed to do the same and did not produce any evidence challenging the traceability that Appellee demonstrated. We fail to find any error.

## CONCLUSION

{¶27} For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The January 19, 2023 judgment of the Jefferson County Court of Common Pleas, granting the parties a divorce and awarding the marital residence to Appellee is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**