[Cite as *Rinehart v. Rinehart*, 2024-Ohio-1221.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Stephanie Rinehart, | : | |
| Plaintiff-Appellee, | : | No. 23AP-233 |
| | | (C.P.C. No. 21DR-2804) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jacob Rinehart, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 29, 2024

**On brief:** *Mary C. Ansbro*, for appellee. **Argued:** *Mary C. Ansbro*.

**On brief:** *Jonathan M. Pope*, *Dmitriy Borshchak*, and *Hank Sonderman*, for appellant. **Argued:** *Jonathan M. Pope*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

JAMISON, J.

{¶ 1} Defendant-appellant, Jacob Rinehart, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, in favor of plaintiff-appellee, Stephanie Rinehart. For the following reasons, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant and appellee were married on October 17, 2015. Appellee filed her complaint for divorce on August 11, 2021. Appellant filed his answer and counterclaim for divorce on September 16, 2021. Trial on the merits was conducted on March 2 and March

3, 2023. Prior to the trial, the parties executed an agreed shared parenting plan and submitted stipulations regarding numerous issues. Consequently, the sole issues for trial were the amount of child support, a determination of attorney fees, and the division of proceeds from the sale of the marital residence.

{¶ 3} The parties purchased the marital residence just prior to their marriage. They closed on the residence located on Cypress Creek Drive, Columbus, Ohio, 43228, on August 5, 2015. Though the parties were not yet married, the deed to the property identified the parties as joint tenants with a right of survivorship. It is undisputed that the down payment in the amount of $40,348.64 was paid solely out of funds in appellant's premarital savings account.[1] At trial, appellant testified that he made the down payment exclusively from his premarital wages and other income. Appellee testified that the parties were living together prior to the marriage and sharing expenses at their rented apartment.

{¶ 4} The parties stipulated that they had a marital interest in the home, but that appellant would be afforded the opportunity to present evidence as to his separate property interest in the home. In the March 16, 2023 divorce decree, the court adopted the parties' stipulations and incorporated them into the decree by reference. In the divorce decree, the trial court determined that, except for the reduction in the principal balance of the mortgage that occurred during the marriage, the marital residence was the parties' separate property. Accordingly, the trial court ordered the proceeds of the sale to be divided equally between the parties. As a result of the property division in the divorce decree, appellant recovered only half of the down payment.

---

[1] Three separate accounts owned by appellant were used to meet the down payment.

{¶ 5}    Appellant timely appealed to this court from the March 16, 2023 judgment. On June 28, 2023, appellee moved this court to dismiss the appeal as moot because appellant voluntarily instructed the title company to release sale proceeds to appellee in accordance with the divorce decree.  This court issued a journal entry denying the motion on July 27, 2023.

## II.  ASSIGNMENTS OF ERROR

{¶ 6}    Appellant assigns the following as trial court errors:

> [1.] In light of the parties' stipulations, the trial court erred in finding that appellee possessed a separate property interest in the real property owned by the parties that was purchased prior to the marriage.

> [2.] The trial court erred in finding that appellee traced her separate property interest in the property owned by the parties that was purchased prior to the marriage.

> [3.] The trial court erred in finding that appellant failed to trace his separate property interest in the real property owned by the parties that was purchased prior to the marriage.

## III.  STANDARD OF REVIEW

{¶ 7}    In *Lindsey v. Lindsey*, 10th Dist. No. 15AP-733, 2016-Ohio-4642, ¶ 5, this court set out the appropriate standard of review as follows:

> In divorce proceedings, a trial court must divide marital property and debt equally or, if an equal division is inequitable, equitably. A trial court has broad discretion in the allocation of marital assets and debt, and an appellate court will not disturb a trial court's judgment absent an abuse of discretion. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.

(Internal citations omitted).

## IV.  LEGAL ANALYSIS

### A. Appellant's first assignment of error

{¶ 8} In appellant's first assignment of error, appellant contends that the trial court erred in finding that appellee possessed a separate property interest in the subject real property because it was purchased prior to the marriage and the parties had stipulated that only appellant had the right to claim a separate interest.

{¶ 9} It is axiomatic that marital property does not include separate property. R.C. 3105.171(A)(3)(b). Separate property is statutorily defined in R.C. 3105.171(A)(6). *Hetzner v. Hetzner*, 10th Dist. No. 23AP-176, 2023-Ohio-3951, ¶ 11.

{¶ 10} R.C. 3105.171(A)(6)(a)(ii) defines Separate property in relevant part as follows:

> "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> (ii) Any real or personal property or interest in real or personal property that was *acquired by one spouse* prior to the date of the marriage [.]

(Emphasis added.)

{¶ 11} Conversely, R.C. 3105.171(A)(3)(a)(i) and (ii) defines marital property in relevant part as follows:

> "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:
>
> (i) All real and personal property that currently is owned by either or both of the spouses, * * * and that was acquired by either or both of the spouses during the marriage;
>
> (ii) All interest that either or both of the spouses currently has in any real or personal property, * * * *and* that was acquired by either or both of the spouses during the marriage[.]

(Emphasis added.)

{¶ 12} "When parties contest whether an asset is marital or separate property, the asset is presumed marital property unless it is proven otherwise." *Lindsey* at ¶13, citing *Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 33. The burden is on the spouse seeking to have certain property declared separate property to prove the property is separate, not marital, property. *Id.*, citing *Alderman v. Alderman*, 10th Dist. No. 10AP-1037, 2011-Ohio-3928, ¶ 23. "This requires showing by a preponderance of the evidence that one of the R.C. 3105.171(A)(6)(a) 'separate property' definitions applies to the asset." *Hetzner* at ¶ 13, citing *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 23. Under R.C. 3105.171(A)(6)(b), the commingling of separate property with any other type of property does not destroy its identity, unless the separate property is not traceable. "The characterization of property as marital or separate is a factual issue and is therefore reviewed under the manifest weight of the evidence standard." *Lindsey* at ¶ 13. Accordingly, the trial court's classification of property will not be reversed if it is supported by some competent, credible evidence. *Id.*

{¶ 13} In appellant's affidavit of property and debt, filed on September 16, 2001, appellant claimed a separate interest in the subject real property of $40,348.64, representing the "[d]ownpayment on house." (Sept. 16, 2021 Aff. of Property and Debt at 5.) In her affidavit of property and debt, appellee claimed $1,300 of the premarital equity was her separate property because she contributed that sum to the "[d]own payment on house." (May 15, 2023 Stips., Ex. 2 at 5.)

{¶ 14} The stipulations filed in conjunction with the trial provide in relevant part as follows:

> *The parties presently have marital interest in a certain parcel of real estate* located [on] * * * Cypress Creek Drive,

> Columbus, OH 43228. Title to said property is in the name of Plaintiff and Defendant. See Exhibit A attached hereto and incorporated herein. The real Franklin County Ohio Clerk of Courts of the real estate shall be listed for sale. *Defendant reserves the right to argue that he has a separate property interest.*

(Emphasis added.) (May 15, 2023 Stips., Joint Ex. 1A at 1-2.)

**{¶ 15}** Pursuant to the above-quoted stipulation, the right to claim a separate property interest in the marital home at trial was reserved to appellant. The trial court subsequently adopted the parties' stipulations and incorporated the stipulations into the divorce decree.

**{¶ 16}** The trial court nevertheless made the following determination regarding the real property division:

> In their initial filings with the Court, each party affirmed his and her belief that he/she held a separate interest in this real estate. Stephanie asserted a separate interest of $1,300. Jacob asserted a separate interest of $40,348.64. At the time of trial, Jacob reaffirmed his position while Stephanie asserted that the evidence does not support the contention that either party holds an identifiable and traceable separate interest. No mortgage payments were made on the residence until after the parties' marriage in October 2015. The purchase price of the real estate was $195,000. The balance owed on the mortgage at the time of the parties' marriage was $156,000. *The equity at the time of marriage is therefore found to be $39,000.*
>
> * * *
>
> *The Court finds that each party had a one-half 50% separate interest in the real estate at the time of their marriage and neither party has identified the value of any marital interest in the property.* Any pay down on the mortgage would be marital and should be equally allocated and divided between the parties. The parties have stipulated and agreed to list the real estate for sale. Without evidence of increase in value the Court finds that any increase in value, if any, would be passive and therefore would remain each parties' separate property. *Any equity resulting after sale of the residence, whether it is*

> *from passive growth or marital paydown of the mortgage,*
> *should be equally divided and allocated between the parties.*

(Emphasis added.) (Mar. 16, 2023 Jgmt. Entry-Decree of Divorce at 3-4.)

{¶ 17} The trial court found the premarital equity in the home of $39,000, was the parties' separate property. The trial court further found that any increase in the value of the home was the separate property of each party, but the reduction in principle during the marriage was marital property. The trial court then ordered all proceeds from the sale of the property be divided equally between the parties upon sale, regardless of when or how acquired.

{¶ 18} Because Ohio law does not recognize common law marriage, and because the parties purchased the home prior to marriage, it was reasonable for the trial court to conclude that the premarital equity in the home was separate property, as each party acquired an interest in the subject real property prior to the marriage. *See* R.C. 3105.171(A)(6)(a)(ii), *Hetzner* at ¶ 22.

{¶ 19} Appellant contends that the trial court's property division is contrary to the parties' stipulation because appellee waived her right to claim a separate interest in the down payment. Our review of the stipulations reveals that appellant reserved a right to assert a separate interest in the subject real property, but appellee did not. Appellant nevertheless acknowledged at trial that his separate property interest should be reduced by the $1,300 contribution appellee claimed to have made toward the down payment in her affidavit of property and debt. Thus, we perceive no trial court error in permitting appellee to assert a separate property interest in the premarital down payment. We also disagree with appellant's claim that the parties stipulated the home was entirely marital property, as the stipulation merely states that "the parties presently have a marital interest" in the

property. (May 15, 2023 Stips., Joint Ex. 1A at 1.) The trial court found the parties had both a marital interest and a separate interest in the subject real property. That finding is consistent with the stipulations.

{¶ 20} For the foregoing reasons, we overrule appellant's first assignment of error.

## B. Appellant's second assignment of error

{¶ 21} In appellant's second assignment of error, appellant contends that the trial court erred when it divided the proceeds from the sale of the real property equally, because the premarital equity was largely his separate property. We agree.

{¶ 22} There is no disagreement with the trial court's finding that the premarital equity in the home was $39,000. Rather, appellant disagrees with the trial court's decision to divide the premarital equity equally. Appellant argues that the premarital equity was entirely his own separate property, less appellee's $1,300 contribution, because he made the down payment out of his own funds. The trial court found as follows:

> In support of his claim for separate property, Jacob presented a Uniform Residential Loan Application, the Settlement Statement for the real estate, the parties' joint credit report from July 2015 and his Chase Acct #5020 statement dated September 23, 2015. Plaintiff argues that the loan application identifies three accounts with total liquid assets of $80,512 at the time of the loan application and testified that the funds paid on line 301 of the Settlement Statement in the amount of $40,348.54 came from these accounts.
>
> * * *
>
> Pursuant to title, both Stephanie and Jacob had a one-half interest in the real estate at the time of their marriage. Stephanie testified that prior to the marriage the parties shared expenses and their funds may have been commingled. Jacob presented no other evidence to directly trace the source of the down payment. Further, Jacob's Chase checking account demonstrates miscellaneous deposits of approximately $3,655 made into his Chase account prior to

> the parties' marriage (although after the purchase of the real estate) that he could not identify the source.
>
> * * *
>
> *The Court finds that each party had a one-half 50% separate interest in the real estate at the time of their marriage and neither party has identified the value of any marital interest in the property.*

(Emphasis added.) (Mar. 16, 2023 Jgmt. Entry-Decree of Divorce at 3-4.)

**{¶ 23}** The trial court found that one-half of the premarital down payment was the separate property of appellant, and the other half was the separate property of appellee. The trial court also awarded the parties passive appreciation attributable to their respective contributions to the down payment on the house. In other words, the trial court found that appellee proved, by a preponderance of the evidence, she contributed one-half of the down payment.

**{¶ 24}** Appellant contends that the evidence does not support a finding that appellee contributed $19,500 toward the down payment. We agree with appellant.

**{¶ 25}** As noted earlier, the party seeking to have a particular asset or assets classified as separate property bears the burden, by a preponderance of the evidence, of tracing the asset or assets to separate property. R.C. 3105.171(A)(6)(b). *See also Peck v. Peck*, 96 Ohio App.3d 731 (10th Dist.1994). Here, the burden was on each party to trace all or part of the down payment to their own separate property. *See Hemming v. Hemming*, 10th Dist. No. 02AP-94, 2002-Ohio-4735, ¶ 10.

**{¶ 26}** It is undisputed that the entire down payment for the home was paid from an account wholly owned by appellant. Appellant testified that the funds in the account were derived from his premarital wages. Appellee testified that each party maintained their own

separate accounts, and they did not have a joint account. Appellee argues that even though the down payment was paid from an account owned by appellant, she must have contributed more than $1,300 to the down payment because she shared living expenses with appellant prior to acquiring the real property in question. This is a logically flawed argument.

{¶ 27} Appellee testified as follows:

> [COUNSEL]. And the actual funds that were paid to the -- at the time of closing, where did those funds come from?
>
> [APPELLEE]. They were requested to be in one cashier's check, and they were from the account that Jacob had.
>
> [COUNSEL]. How much money did you give to Mr. Rinehart in order to pay a portion of that downpayment?
>
> [APPELLEE]. As I said, the expenses we have were shared.
>
> THE COURT: That's not -- his question was how much money did you give him?
>
> [APPELLEE]: I don't recall the exact amount.

(Mar. 2, 2023 Tr. Vol. II at 47.)

{¶ 28} Appellee's testimony merely proves she shared in the parties' living expenses prior to marriage. Absent evidence that appellee paid all or a disproportionate share of the parties' living expenses prior to the marriage, the mere fact that she helped appellant meet the parties' living expenses does not prove that she contributed additional funds toward the down payment. Similarly, the fact that the parties' may have comingled their premarital funds in the process of sharing living expenses does not relieve appellee of her burden of proving she contributed additional funds for the down payment. *See Lindsey* at ¶ 15.

{¶ 29} Here, the evidence conclusively shows that the entire down payment for the home was paid from an account owned by appellant. Our review of the evidence reveals appellee was unable to identify any funds she contributed to the account from which the down payment was drawn or that she otherwise provided funds to appellant for the purpose of funding the down payment, beyond the $1,300 she itemized in her August 11, 2021, affidavit of property and debt. Appellee was unwilling to provide even an estimate of the amount of money she allegedly gave to appellant for the purpose of the down payment. Appellee testified on cross examination as follows:

> [COUNSEL]. So why did you believe on August 11th or August, I believe, 11th, 2021, that you had only paid $1,300?
>
> [APPELLEE]. I was asked to fill out this paperwork to file for the divorce, and at the time that was the information I could recall.

(Mar. 2, 2023 Tr. Vol. II at 49.)

{¶ 30} On redirect, appellee could not provide any further detail about the amount she contributed toward the down payment:

> [COUNSEL]. Stephanie, do you believe that you contributed other funds to the downpayment besides the 1,300 in your affidavit?
>
> [APPELLEE]. I can't recall the exact amount.
>
> [COUNSEL]. Do you believe it was more?
>
> [APPELLEE]. Yes.

(Mar. 2, 2023 Tr. Vol. II at 57.)

{¶ 31} Though the trial court noted in the divorce decree that appellant could not identify the source of miscellaneous deposits of approximately $3,655 to his Chase checking

account, the trial court acknowledged that those deposits were made after the purchase of the home. Appellee did not claim to be the source of those deposits.

{¶ 32} Given the parties' stipulations, appellee's affidavit, and appellee's testimony at trial, a finding that appellee contributed $19,500 toward the down payment is unsupportable and amounts to pure speculation. On this record, it was not reasonable to conclude that appellee's separate interest in the premarital down payment was greater than $1,300.

{¶ 33} For the foregoing reasons, appellant's second assignment of error is sustained.

**C. Appellant's Third Assignment of Error**

{¶ 34} In his third assignment of error, appellant argues that the trial court erred by concluding appellant failed to prove, by a preponderance of the evidence, that his separate interest in the down payment exceeded $19,500. The trial court essentially determined that appellant was required to provide his bank account records to support his claim that his wages were the source of the funds in the account from which the down payment was made. We disagree.

{¶ 35} Traceability becomes the focus when determining whether separate property has lost its separate character after being commingled with marital property. *Peck* at 734. In such cases, the party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Id.* Here, the down payment for the home was made prior to the marriage from funds in appellant's account. Because the parties were not married at the time of the purchase, the down payment did not lose its character as separate property. *See Hetzner*

at ¶ 18. This is not a case where the down payment for the marital residence was drawn from the sale of real property owned by one spouse prior to the marriage, or from one spouse's premarital inheritance, or from funds held in a jointly owned account. In such cases, the quality and quantity of evidence required to trace one spouse's separate property to the down payment for the marital residence is necessarily greater. *See Peck* at 735.

{¶ 36} Appellant testified that the funds in his personal bank accounts in 2015 were derived from his own premarital wages. Appellee acknowledged that she maintained her own personal accounts, and the parties did not have a joint account. The evidence in this case established there were only two possible sources of the funds in appellant's account: appellant's wages, and appellee's wages.[2] Under the circumstances, appellee's failure to produce any evidence to support a finding that her contribution was greater than $1,300, or to even specify the amount of the contribution, supports the conclusion of the remaining funds used for the down payment were appellant's separate property. *See Matic v. Matic*, 11th Dist. No. 2000-G-2266, 2001 Ohio App. LEXIS 3360 (10th Dist.1994.) (Where the parties were the only two sources of the funds used for a down payment, that one spouse deposited certain traceable funds in a joint account from which the down payment was made proves, circumstantially, that the other spouse contributed the remaining funds, even though that spouse could not trace every deposit.)

{¶ 37} In our view, appellant's evidence that the down payment was drawn from his separate account containing his premarital wages, combined with appellee's admission that

---

[2] Appellant testified that he was employed by Universal Measurement Inc., and he made $75,000 in 2022 and in 2023, plus reimbursements for health care and fuel. Appellee testified that she works at The Ohio State University, and she made $54,000 in 2023. The evidence in the record regarding the relative incomes of the parties reveals that both parties have been gainfully employed and, historically, appellant's income has been roughly twice that of appellee's income throughout the marriage.

the down payment was drawn entirely from an account owned by appellant, was sufficient to meet appellant's initial burden of proof. Because appellant met his burden of proving the funds used for the down payment were his separate property, the burden shifted to appellant to show that the funds were appellee's separate property. *See Yarosz v. Montgomery*, 7th Dist. No. 23 JE 0006, 2024-Ohio-652, citing *Victor v. Kaplan*, 8th Dist. No. 108252, 2020-Ohio-3116. Appellee's argument to the contrary unfairly distorts the burden of proof by requiring appellant to disprove appellee's claim that she contributed some undisclosed portion of the funds in his separate account.

{¶ 38} Appellee also contends that the trial court must have decided to divide the premarital down payment equally, because the trial court did not find appellant credible. The divorce decree does not support such a conclusion, as the only specific credibility determination made by the trial court involved appellant's testimony about his current income for purposes of child support. The trial court made the following finding in the divorce decree:

> In addition to his wages, Jacob receives reimbursement for Health Insurance and Gasoline/Car usage. These funds are received by Jacob as a nontaxable stipend. Jacob testified, and not credibly, that he did not know how much he received each month from this benefit.

(Mar. 16, 2023 Jgmt. Entry-Decree of Divorce at 6.)

{¶ 39} It is not reasonable to conclude, based on this finding, that the trial court did not believe appellant's testimony and documentation regarding the source of the 2015 down payment, particularly where appellee agreed appellant was the sole owner of the account from which the down payment was paid.

{¶ 40} For the foregoing reasons, we sustain appellant's third assignment of error.

## IV. CONCLUSION

{¶ 41} Having overruled appellant's first assignment of error, but having sustained appellant's second and third assignments of error, we reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.